# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | | |
|---|---|---|
| **CIS FINANCIAL SERVICES, INC.,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | **CASE NO. 6:13-cv-1281-SLB** |
| **v.** | } | |
| | } | |
| **GREG BROOKS,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

This case is currently before the court on plaintiff's Motion to Remand. (Doc. 4.)[1]

Plaintiff claims a forum selection clause in an Employment Agreement between the parties

requires them to litigate this dispute in state court in Marion County, Alabama. (*Id*. at 2-3.)

Defendant argues that the forum selection clause plaintiff is seeking to enforce has been

modified by a subsequent agreement between the parties that allows for jurisdiction in federal

court. (Doc. 6 at 1.) Defendant attached five exhibits to his opposition brief, including the

Employment Agreement, that he argues must be read together as parts of a unified

transaction. (*Id.* at 9-10.) Plaintiff argues that defendant is not personally a party to any

agreement except the Employment Agreement, whose terms it alleges are still in effect. (Doc.

8 at 3.) Plaintiff also requests an award of attorney's fees incurred as a result of defendant's

---

[1]  Reference to a document number, ("Doc. ___"), refers to the number assigned to
each document as it is filed in the court's record.

removal. (Doc. 4 at 10-12.) The court will grant plaintiff's motion to remand, but will not award plaintiff attorney's fees.

## SUMMARY OF RELEVANT FACTS

In this case it's important to keep who's who and what's what straight. Plaintiff CIS is a financial services corporation whose principal place of business is in Hamilton, Alabama. (Doc. 4 at 2.) Defendant Greg Brooks was an Executive Vice President at CIS from November 19, 2012, to May 2, 2013. (Doc. 6 at 3, 6-7.) As its name might give away, 267 Floridian, LLC is a Florida limited liability company. (Doc. 6-2 at 2.) Its only member is Greg Brooks. (Doc. 6 at 2.) Sonny Jeung is a resident of California. (Doc. 6 at 2.) At some point during the relevant time period, Mr. Jeung became the president and CEO of CIS and the owner of all of its outstanding capital stock. (Doc. 6 at 2; doc. 6-3 at 3; doc. 6-5 at 2.)

On June 7, 2012, Mr. Brooks and CIS entered into a written "Employment Agreement" contingent upon Mr. Jeung's successful purchase of CIS. (Doc. 6-1 at 3.) Mr. Brooks agreed to serve as an Executive Vice President of CIS and CIS agreed to give Mr. Brooks, among other forms of compensation, $200,000 per year for five years. (*Id*. at 3-4.) Both parties agreed that "CIS will sell fifteen (15%) percent of CIS stock to Brooks (or an entity designated by him) for a purchase price of $825,000," financed by CIS. (*Id*. at 5.) Under the heading "Jurisdiction Venue," the following text appears: "[p]arties hereby waive, consent to, and agree that personal jurisdiction of venue shall be in the appropriate State court of Marion County, Alabama, with respect to any cause of action arising hereunder, or

with respect to any document or instrument delivered pursuant thereto." (*Id.* at 7.) The agreement states that it "contains the entire understanding of the parties regarding the subject matter of the Agreement . . . ." (*Id.* at 6.) On the signature page, Mr. Jeung signed for CIS and Mr. Brooks signed for himself. (*Id.* at 8.) This is the agreement that CIS is now seeking to rescind through its complaint. (Doc. 4 at 4.)

On June 8, 2012, three other agreements were formed:

(1) 267 Floridian, LLC executed a promissory note for $825,000 payable to Mr. Jeung or the holder. (Doc. 6-2 at 2.) The document expressly incorporates an attached "Repayment Agreement." (*Id.*) Mr. Brooks signed for 267 Floridian, LLC as its member. (*Id.*)

(2) 267 Floridian, LLC and Mr. Jeung entered into a "Repayment Agreement" reciting various provisions related to 267 Floridian, LLC's stock purchase agreement with Mr. Jeung. (Doc. 6-3 at 2.) Under the heading "Submission to Jurisdiction," the following text appears:

> Each of the parties submits to the jurisdiction of any state or federal court sitting in Tuscaloosa, Alabama, in any action or proceeding arising out of or relating to this Agreement and agrees that all claims in respect of the action or proceeding may be heard and determined in any such court. Each party also agrees not to bring any action or proceeding arising out of or relating to this Agreement in any other court.

(*Id.* at 5.) On the signature page, Mr. Brooks signed for 267 Floridian, LLC as its member and Mr. Jeung signed for himself. (*Id.*)

(3) 267 Floridian, LLC, Mr. Jeung, and CIS entered into a "Stock Purchase Agreement" where the parties agreed that CIS and Mr. Jeung would sell 267 Floridian, LLC

fifteen percent of CIS's outstanding stock. (Doc. 6-4 at 3.) The Stock Purchase Agreement contains a "Submission to Jurisdiction" provision identical to the one in the Repayment Agreement. (*Id.* at 13; doc. 6-3 at 5.) On the signature page, Mr. Brooks signed for 267 Floridian, LLC as its member, Mr. Jeung signed for CIS as its president, and Mr. Jeung signed again for himself. (Doc. 6-4 at 13.)

On October 18, 2012, Mr. Jeung "completed the purchase of all of the outstanding shares of CIS . . . ." (Doc. 6-5 at 2.)

On December 28, 2012, 267 Floridian, LLC, Mr. Jeung, and CIS entered into a "Closing Agreement," which claims to "modify" a "Transaction" consisting of a Stock Purchase Agreement, a Promissory Note, a Repayment Agreement, and an Employment Agreement. (Doc. 6-5 at 2.) The Closing Agreement states that it is retroactively effective as of October 18, 2012, but that the attached Employment Agreement "shall be in effect as of October 19, 2012 under its terms and conditions." (*Id.*) It contains a "Submission to Jurisdiction" provision nearly identical to the ones in the Repayment Agreement and the Stock Purchase Agreement, except for an irrelevant portion of the provision's last sentence. (*Id.* at 4.) On the signature page, Mr. Brooks signed for 267 Floridian, LLC as its member, and two unsigned lines appear: one for CIS, by Mr. Jeung as its CEO, and one simply for Mr. Jeung. (*Id.* at 5.)[2]

---

[2]At oral argument on the Motion to Remand, counsel for both parties informed the court that it is undisputed that the original Closing Agreement was signed by all listed parties. (*See* doc. 6-5 at 5.) In other words, the original Closing Agreement's validity is

4

Mr. Brooks was fired on May 2, 2013. (Doc. 6 at 7.) Plaintiff soon after filed a complaint in state court in Marion County, Alabama, seeking a declaratory judgment and equitable recision of the Employment Agreement. (*Id.*)

## DISCUSSION

**1. Removal**

Defendant removed this case pursuant 28 U.S.C. § 1332(a), which allows federal courts to hear cases between diverse parties when the amount in controversy is over $75,000. While defendant established that the parties are completely diverse, he did not mention whether the amount in controversy was satisfied in his notice of removal. (Doc. 1 at 2.) The amount in controversy was not clear from the face of the complaint either, because the complaint seeks equitable relief, not money damages. "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). Plaintiff argues that this "is a declaratory action and does not involve damages." (Doc. 8 at 6.) However, a request for declaratory relief does not preclude a finding that $75,000 or more is in controversy. *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) ("When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object

---

not at issue here.

of the litigation from the plaintiff's perspective."). The court can "review the record to find evidence that diversity jurisdiction exists." *Williams*, 269 F.3d at 1320. The evidence here is clear: the complaint seeks to rescind a contract that requires plaintiff to pay $200,000 per year for five years to defendant. (Doc. 1-1 at 10-11.) Therefore, the court finds that the requirements of 28 U.S.C. § 1332(a) are met.

Plaintiff argues that the forum selection clause in the Employment Agreement requires defendant to defend this suit where plaintiff sued him: in state court in Marion County, Alabama. (Doc. 4 at 1.) Defendant argues that the Employment Agreement has been modified by the Closing Agreement or else should be read in harmony with contemporaneous agreements that establish venue elsewhere. (Doc. 6 at 1, 6, 9.)

The court should first determine what law applies to interpret the relevant agreements. Plaintiff notes that forum selection clauses "are interpreted according to ordinary contract principles and may constitute waivers of the right to remove." (Doc. 4 at 5) (citing *Global Satellite Comm. Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1271-72 (11th Cir. 2004)). Contract interpretation is normally an issue of state law, but plaintiff quotes *Cornett v. Carrithers*, 465 F. App'x 841, 842 (11th Cir. 2012), in which the court explained that "the construction of forum selection clauses by federal courts is a matter of federal common law, not state law of the state in which the federal court sits." (citing *P & S Bus. Machs., Inc. v.*

*Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003)).[3] This might appear confusing at first, since all contracts in the record state that they are governed by Alabama law. (Doc. 6-1 at 7; doc. 6-2 at 2; doc. 6-3 at 4; doc. 6-4 at 12; doc. 6-5 at 4.) But neither *Cornett* nor *Canon USA* say that federal *common* law governs interpretation of *contracts* that include a forum selection clause. *Canon USA* says that "[c]onsideration of *whether* to *enforce* a forum selection clause in a diversity jurisdiction case is governed by federal law, under 28 U.S.C. § 1404(a) (1982), not state law." *Canon USA*, 331 F.3d at 807 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28-29 (1988)) (emphasis added). In *Ricoh* and *Canon USA*, the issue was whether a forum selection clause mandated transferring a case within the federal court system pursuant to 28 U.S.C. § 1404. *Canon USA*, 331 F.3d at 806; *Ricoh*, 487 U.S. at 29. Here, plaintiff is arguing that one forum selection clause applies and other forum selection clauses do not. Plaintiff is not requesting transfer pursuant to § 1404. It is requesting remand to state court. The ultimate question is not *whether* to enforce a forum selection clause, but *which* forum selection clause governs this dispute.

The court need not decide in this case whether federal common law or Alabama law applies in interpreting the contracts. Federal common law and Alabama law are closely aligned on the relevant points of this case. The court in *Cornett* notes that "under federal

---

[3]During oral argument on the Motion to Remand, defendant's counsel argued that *Cornett* is not binding on this court because it is an unpublished opinion. Defendant is correct. *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants.").

common law, forum selection clauses are to be interpreted by reference to ordinary contract principles." *Cornett*, 465 F. App'x at 842 (citing *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1261 (11th Cir. 1999)). And ordinary contract principles, ordinarily, come from state common law. *See Miree v. DeKalb Cnty., Ga.*, 433 U.S. 25, 28 (1977) ("Since the only basis of federal jurisdiction alleged for petitioners' claim against respondent is diversity of citizenship, 28 U.S.C. § 1332, the [contract in the] case would unquestionably be governed by Georgia law, *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), but for the fact that the United States is a party to the contracts in question, entered into pursuant to federal statute.").

Plaintiff argues that the only relevant agreement is the Employment Agreement, because that is the only agreement between the parties to this lawsuit, and because plaintiff is only suing to rescind that agreement. If that is true, it will be dispositive. The Employment Agreement establishes that "personal jurisdiction of venue shall be"[4] in state court in Marion County. *See Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011) ("Based on a plain reading of the clause, we conclude that the forum designation in the clause is not permissive, but mandatory . . . the use of the term 'shall' is one of requirement.").

Mr. Brooks argues that selection clauses in other contracts negate the selection clause in the Employment Agreement, or at least make it ambiguous:

---

[4]The word "of" is apparently a typographical error. "And" would make more sense.

> Here we have an Employment Agreement that is tied to, and inseparable from, other contracts related to the terms of the Employment Agreement which have different forum selection clauses and allow the case to proceed in federal court. Further, the Employment Agreement is now considered a "Transaction" in the Closing Agreement which states that the agreed upon forum is the federal court in Tuscaloosa, Alabama.

(Doc. 6 at 9.) In other words, because the Employment Agreement was a part of a larger transaction, it was foreseeable that Mr. Brooks might later invoke the forum selection clause in the Closing Agreement even if he was not a signatory to that particular agreement. Although defendant does not cite this law in his brief, both Alabama law and federal common law recognize that non-signatories may invoke a contract's forum selection clause against a signatory in some circumstances. *Ex parte Procom Servs., Inc.*, 884 So. 2d 827, 834 (Ala. 2003)[5]; *Liles v. Ginn-La W. End, Ltd.*, 631 F.3d 1242, 1256 (11th Cir. 2011). Such circumstances include: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1169-70 (11th Cir. 2009). Also, a non-signatory may invoke a forum selection clause when he or she is "'closely related' to the dispute such that it becomes 'foreseeable' that it will be

---

[5] *Ex parte Procom* cites a number of federal cases in support of this proposition, including *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209-210 (7th Cir. 1993), *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988), and *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984) ("[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.").

bound." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (quoting *Hugel*, 999 F.2d at 209).[6]

Courts have explored various permutations of enforcement by or against non-signatory transaction participants. *See Smith v. Prof'l Claims, Inc.*, 19 F. Supp. 2d 1276, 1282 (M.D. Ala. 1998) (signatory defendant could enforce clause against both joint-venturing plaintiffs: the non-signatory and the signatory); *Razi v. Razavi*, 5:12-CV-90-OC-34PRL, 2013 WL 1193005, at *1-2 (M.D. Fla. Mar. 22, 2013) and *Ex parte Procom Serv.*, 884 So. 2d at 834 (non-signatory individual co-defendant(s) could enforce clause against signatory plaintiff). However, the circumstances here are unique. Plaintiff and defendant, sometimes in his individual capacity and sometimes on behalf of his one-member corporation, signed a number of agreements with conflicting forum selection clauses. Plaintiff is now seeking to enforce one of those forum selection clauses against defendant, and argues that the court should ignore the others.

In *Gonzalez v. Watermark Realty Inc.*, No. 09-60265-CIV, 2010 WL 1299740 (S.D. Fla. 2010), the plaintiff brought claims for breach of contract, fraud in the inducement, and breach of fiduciary duty against a real estate agent and her agency. *Id.* at *1. There were two

---

[6]The standard announced in *Lipcon* might not be as liberal as it sounds, because the court held that "the non-signing parties were bound by the choice of law and choice of forum clauses where the parties' rights were 'completely derivative or those of the [signing parties]–and thus directly related to, if not predicated upon the interests of the [signing parties].'" *Cooper*, 575 F.3d at 1170 (quoting *Lipcon*, 148 F.3d at 1299) (internal quotation marks and citations omitted).

relevant contracts: (1) a Reservation Agreement signed by the plaintiff and the real estate agent requiring a $30,000.00 down payment; and (2) a real estate Sales Contract requiring a $200,000.00 down payment and containing a forum selection clause signed by the plaintiff and the agent on behalf of the owner of the real estate. *Id.* Plaintiff attempted to avoid the forum selection clause by arguing that he was suing under the Reservation Agreement, not the Sales Contract, and that neither defendant was a party to the Sales Contract. *Id.* at *3. Despite the plaintiff's characterization of his claims, the court found that he was asserting claims under both contracts because he was seeking return of money paid under both contracts. *Id.* The court also noted that the Sales Contract expressly referred to money paid under the Reservation Agreement. *Id.* In concluding that the non-signatory defendants could invoke the forum selection clause, the court said: "In sum, Defendants' involvement in the transaction is such that Plaintiff cannot now divorce Defendants from the Sales Contract in an effort to bypass the forum-selection clause's application." *Id.* at *4.

Like the defendants in *Gonzalez*, defendant is seeking to enforce a forum selection clause in a contract that he signed, but not in his individual capacity. Alabama and federal common law potentially allow him to do so—he is within a range of transaction participants who would foreseeably invoke the selection clause in the Closing Agreement.[7] However, CIS

---

[7]The Closing Agreement contains a "No Third-Party Beneficiaries" clause that prohibits the agreement from "confer[ring] any rights or remedies upon any Person other than the Parties," but the agreement also reaffirms "the Employment Agreement between Greg Brooks [a nonparty] and CIS." It is unnecessary to analyze how broad the "No Third-Party Beneficiary" clause is under these circumstances. For an analysis of similar

has a better argument than the plaintiff in *Gonzalez* for why, in this case, the court should ignore some of the forum selection clauses that it signed. CIS does not need any contract other than the Employment Agreement to obtain the relief it has requested: recision of the Employment Agreement. The plaintiff in *Gonzalez* needed the Sales Agreement to prove that he was entitled to the additional $200,000 in damages, but did not want the court to honor the forum selection clause in the Sales Agreement.

CIS and Mr. Brooks negotiated a number of agreements in June of 2012. Then, on (effectively) October 18, 2012, they modified and consolidated them—all except one, the Employment Agreement. That one, they agreed, "shall be in effect as of October 19, 2012 under its terms and conditions." (Doc. 6-5 at 2.) Now CIS wants to rescind that separate agreement, according to its terms and conditions. There are only two relevant conditions here: (1) the parties must litigate "in the appropriate state court of Marion County, Alabama, with respect to any cause of action arising hereunder," and (2) "[t]his Agreement contains the entire understanding of the parties regarding the subject matter of the Agreement and shall supersede and replace all other agreements or understandings of whatever nature . . . ." (Doc. 6-1 at 6-7.) If the latter condition means anything, it means that when a party is seeking merely to rescind an unambiguous agreement, no "prior or contemporaneous agreements" can be consulted "in order to change, alter, or contradict the terms of the integrated contract." *Capmark Bank v. RGR, LLC*, 81 So. 3d 1258, 1269 (Ala. 2011) (internal citations and

---

facts, see *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1168-69 (11th Cir. 2009).

quotation marks omitted). Even if the court could consult the Closing Agreement, the only way to give both of the competing forum selection clauses effect would be to hold that litigation over the Stock Purchase Agreement, the Promissory Note, and the Repayment Agreement should be in state or federal court in Tuscaloosa, and litigation over the Employment Agreement should be in state court in Marion County.

Therefore, the court finds that plaintiff's Motion to Remand, (doc. 4), is due to be granted except insofar as it requests attorney's fees.


### 2. Attorney's Fees

Plaintiff asks this court to award it "just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). It asserts that the forum selection clause in the Employment Agreement makes it "beyond debate that the parties have agreed to have [this] matter decided in the Circuit Court of Marion County, Alabama," and that defendant had no reasonable basis for removal. (Doc. 4 at 11-12.)

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Courts have awarded fees where "clearly established law," such as the forum defendant rule, "foreclosed a defendant's basis for removal," *Wolf v. Kennelly*, 574 F.3d 406, 411-12 (7th Cir. 2009), or where a defendant attempted to invoke federal question jurisdiction because the plaintiff's complaint

"mention[ed] the words 'federal' and 'overtime,'" *Devine v. Prison Health Servs., Inc.*, 212 F. App'x 890, 891 (11th Cir. 2006). Removal would have been appropriate in this case but for the forum selection clause in the Employment Agreement. Even considering the Employment Agreement's forum selection clause, the Closing Agreement's competing selection clause provided an objectively reasonable basis for arguing that removal was permissible.

Therefore, the court finds that plaintiff is not entitled to an award of attorney's fees incurred as a result of removal.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion to Remand will be granted and its request for attorney's fees will be denied.

**DONE**, this 25th day of March, 2014.

_____

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE